## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**AMBER WILLIAMS**, *an individual*;
**AKIA ADAMS,** *an individual*;
**ROBERT JOHNSON,** *an individual*;
**LATREESE LOVING,** *an individual*;
and **SAUDA MUHAMMAD,** *an*
*individual; and* **RHONDA RUSAN,** *an*
*individual*

Case No. 18-cv-13250
Hon.  Mark A. Goldsmith
Mag. Mona K. Majzoub

       Plaintiffs,

vs.

**ENTERPRISE LEASING**
**COMPANY OF DETROIT, LLC,**

       Defendant.

_____

| **DEBORAH GORDON LAW** | **BUTZEL LONG, P.C.** |
|---|---|
| Deborah L. Gordon (P27058) | Carey A. DeWitt (P36718) |
| Elizabeth Marzotto Taylor (P82061) | James S. Rosenfeld (P39434) |
| Attorneys for Plaintiffs | Attorneys for Defendant |
| 33 Bloomfield Hills Parkway, Suite 220 | 41000 Woodward Avenue |
| Bloomfield Hills, Michigan 48304 | Stoneridge West Building |
| (248) 258-2500 | Bloomfield Hills, Michigan 48304 |
| dgordon@deborahgordonlaw.com | (248) 258-1616 |
| emarzottotaylor@deborahgordonlaw.com | dewitt@butzel.com |
| | rosenfeld@butzel.com |

_____

## PLAINTIFFS' FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs Amber Williams, Akia Adams, Robert Johnson, Latreese Loving, Sauda Muhammad, and Rhonda Rusan by their attorneys Deborah Gordon Law, complain against Defendant as follows:

## Jurisdiction and Parties

1.      This is an action by Plaintiffs Amber Williams, Akia Adams, Robert Johnson, Latreese Loving, Sauda Muhammad, and Rhonda Rusan against Defendant Enterprise Leasing Company of Detroit, LLC ("Enterprise") for discriminating against Plaintiffs on the basis of their race, and retaliating against them.

2.      This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1367, and 28 U.S.C. § 1441.

3.      Plaintiffs Williams, Adams, Johnson, Loving, Muhammad, and Rusan reside in the Eastern District of Michigan.

4.      Defendant Enterprise is a foreign corporation doing business in this District.

## Background Facts

5.      Defendant Enterprise is an automobile rental company located at 338 Lucas Drive, Detroit, MI 48242.

6.      Plaintiff Williams began her employment with Defendant in September 2011, and currently holds the position of Rental Sales Agent.

1

7.    Plaintiff Williams is African American.

8.    Plaintiff Adams began her employment with Defendant in 2016, and last held the position of Rental Sales Agent.

9.    Defendants terminated Plaintiff Adams from her position as a Rental Sales Agent on September 26, 2018.

10.   Plaintiff Adams is African American.

11.   Plaintiff Johnson began his employment with Defendant in April 2016, and currently holds the position of Rental Sales Agent.

12.   Plaintiff Johnson is African American.

13.   Plaintiff Loving began her employment with Defendant in October 2002, and currently holds the position of Booth Agent.

14.   Plaintiff Loving is African American.

15.   Plaintiff Muhammad began her employment with Defendant in September 2014, and currently holds the position of Administrative Representative.

16.   Plaintiff Muhammad is African American.

17.   Plaintiff Rhonda Rusan began her employment with Defendant in 2000, and currently holds the position of Booth Agent.

18.   Plaintiff Rusan is African American.

19. All of Plaintiffs' work performance records have been at all times satisfactory or better.

20. Plaintiffs are supervised by a Shift Manager, Area Manager, Rental Regional Manager, Station Manager and various other management officials.

21. For approximately two years, Defendant created a hostile work environment based on race by discriminating against and harassing customers and Plaintiffs on the basis of their race.

### *Defendants Discriminate Against Non-White Customers Because of their Race*

22. Managers instruct employees, including Plaintiffs to tell African American and other non-white customers that no cars are available, when cars are available and are then rented to white customers.

23. Managers instruct employees, including Plaintiffs on Defendants' "policy" that they are not permitted to rent luxury or high-end cars to African American or non-white customers, even though African American and non-white customers qualify to rent luxury vehicles and these vehicles are available.

24. Managers have stated that "no one who lives on East 7 Mile Road or Joy Road should be driving a luxury car." East 7 Mile Road and Joy Road are predominately African American areas of Detroit.

25.     Managers instruct employees, including Plaintiffs, to lower or waive deposits on rental vehicles for white customers, but to not extend theses courtesies to African American and other non-white customers.

26.     When employees, including Plaintiffs, ask managers to assist with customers, managers ask what the customer's race is before assisting them, and prefer to assist white customers.

27.     Managers refer to African American customers as "locals." Managers instruct employees, including Plaintiffs, that "locals" are required by company "policy" to have the cost of the rental plus a $500 deposit available on a major credit card. This "policy" is frequently not applied to white customers.

28.     Managers have also referred to African American customers by other derogatory terms such as "thugs," and have called the police on African American customers without any justification.

29.     Managers instructed employees, including Plaintiffs, that white customers are allowed to rent vehicles without presenting a driver's license, but African American customers' identification documents are closely scrutinized.

30.     A previous manager stated that he did not expect a customer who presented a fraudulent credit card to be white. Managers stated that they do not expect African American customers to return the vehicles they rent.

4

31.     African American and non-white customers are frequently treated with disregard and disrespect by managers, but white customers receive high-quality customer service.

32.     The open atmosphere of hostility towards African Americans created by Defendant has created a work environment permeated with discriminatory intimidation, ridicule, and insult that is so severe and pervasive that it has altered the conditions of Plaintiffs' work environment, and has created an abusive working environment for them.

33.     Defendant has made no secret of its hostility and disdain towards African Americans, including Plaintiffs. This has caused Plaintiffs anguish and pain, humiliation, embarrassment, outrage, and has significantly interfered with Plaintiffs' ability to do their jobs.

34.     When Plaintiffs brought this discrimination and hostile environment to the attention of Defendants' management and human resources, their complaints were alternately ignored or met with retaliation.

35.     Human resources employees told Plaintiffs that it "isn't their job" to address complaints of racial animus in the workplace, and that Plaintiffs should seek other employment if they do not like their current working environment.

### *Defendants Permit Customers to Harass and Discriminate Against Plaintiffs Because of their Race*

5

36.    Managers refuse to address or discourage customers from making racially discriminatory and harassing comments to employees.

37.    A manager said nothing when a customer referred to an African American customer service employee as "that African American thing."

38.    A white manager assisted a customer without comment after the customer refused to do business with an African American Rental Sales Agent because of the Agent's race.

### Defendants Harass and Discriminate Against Plaintiffs Because of their Race

39.    African American employees, including Plaintiffs, have been harshly disciplined for minor rule infractions or mistakes, but their white coworkers who commit these same rule infractions and mistakes are not disciplined.

40.    Defendants told African American employees, including Plaintiffs, that they are to wear their hair straight, because their natural hair texture is "not professional."

41.    White employees are promoted to more prestigious and sought-after positions, such as working at the counter, without having the requisite qualifications. African American employees, including Plaintiffs, have been refused these opportunities, and are infrequently promoted.

6

42.    Plaintiffs reported these and other facts alleging a hostile work environment based on race to Defendant via an Ethics Hotline Complaint, and personally to their local managers and human resources representatives.

### *Defendants Retaliated Against Plaintiffs*

43.    Almost immediately after receiving Plaintiffs' complaints, Defendant began to engage in retaliatory harassment against Plaintiffs.

44.    Managers denied Plaintiffs holiday pay immediately following their complaints.

45.    Plaintiffs' compensation tiers were drastically reduced immediately following their complaints.

46.    Defendant's Head of Human Resources for Michigan operations attempted to discourage Plaintiffs from continuing to raise issues of racial harassment and discrimination.

47.    Managers and human resources representatives have encouraged Plaintiffs to find other employment because of their complaints. Defendant has made it clear through its actions that it does not wish to employ individuals who raise issues of race discrimination and harassment in the workplace.

48.    Immediately following their complaints, Plaintiffs received several write-ups and disciplines without any rational justification or basis.

49.     Managers have attempted to physically intimidate Plaintiffs because Plaintiffs complained about their behavior.

50.     On September 20, 2018, Plaintiff Adams as indefinitely suspended without pay. Defendant refused to provide any justification whatsoever for this obviously unwarranted and retaliatory discipline.

51.     On September 26, 2018, Defendants terminated Adams in retaliation for reporting the race-based hostile work environment, citing pretextual reasons.

52.     As Adams left the meeting during which she was terminated, her former manager stated, "Bye Felisha."

53.     This derogatory and dismissive comment was based on Plaintiff's race. It references a line from the 1995 film "Friday." The film portrays the character Felisha as a Black female "crackhead."

## COUNT I
### Racial Discrimination in Violation of the Elliott-Larsen Civil Rights Act,
*M.C.L. 37.2102 et seq., as against Defendant Enterprise*

54.     Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs.

55.     Pursuant to the Elliott-Larsen Civil Rights Act ("ELCRA"), Defendants are "employers" covered by the Act. *See* MCL § 37.2201 *et seq*.

56.     Defendants subjected Plaintiffs to a hostile work environment based on race.

57.    Plaintiffs' race was a factor in Defendants' decision to treat Plaintiffs less favorably with regard to the terms, conditions, and benefits of employment on the basis of race.

58.    Defendant, by their agents, representatives, and employees, was predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

59.    As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT II
**Retaliation in Violation of the Elliott-Larsen Civil Rights Act, *M.C.L. 37.2102 et seq.,* as against Defendant Enterprise**

60.    Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs.

61.    Plaintiffs are employees and Defendant Enterprise is their employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq.*

9

62.     Plaintiffs engaged in conduct protected under the ELCRA including, but not limited to, opposing discrimination against customers and employees, and reporting managers' race-based, harassing comments and actions.

63.     Plaintiffs' treatment has been retaliatory and occurred, in part, because Plaintiffs opposed, objected to and refused to acquiesce in discriminatory employment practices, including discrimination against customers and employees based on their race, in violation of the anti-retaliation provisions of Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq.*

64.     The retaliation would not have occurred had Plaintiffs not engaged in activity protected by the Elliot-Larsen Civil Rights Act.

65.     The actions of Defendant, by their agents, employees and representatives, were intentional, in deliberate disregard for the rights and sensibilities of Plaintiffs.

66.     As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiffs' employment were adversely affected, and Plaintiffs were unlawfully harassed, disciplined, and suspended.

67.     As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their

future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT III
### Conspiracy to Violate the Elliott-Larsen Civil Rights Act, *M.C.L. 37.2102 et seq.*, *as against Defendant Enterprise*

68.    Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs.

69.    Plaintiffs are employees and Defendant Enterprise is their employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq.*

70.    Defendant, through its management officials, engaged in conduct prohibited by the ELCRA including, but not limited to:

a.     conspiring to aid, abet, incite, or coerce persons to violate the ELCRA;

b.     attempting directly and/or indirectly to commit acts prohibited by the ELCRA;

c.     willfully obstructing or preventing persons from complying with the ELCRA; and

d.     coercing, intimidating, threatening, or interfering with persons in the exercise or enjoyment of, or on account of their having aided or encouraged other persons in the exercise or enjoyment of, rights granted or protected by the ELCRA.

11

71.     Defendants took these actions to discriminate against customers and employees based, at least in part, on their race, in violation of the provisions of Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq.*

72.     The actions of Defendant, by their agents, employees and representatives, were intentional, in deliberate disregard for the rights and sensibilities of Plaintiffs.

73.     As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiffs' employment were adversely affected, and Plaintiffs were unlawfully harassed, disciplined, and suspended.

74.     As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

**COUNT IV**
**Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964,**
as *against Defendant Enterprise*

75.     Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs.

76.    At all relevant times, Plaintiffs were employees and Defendant their employer within the meanings set forth in Title IVV of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000(e), *et seq.*

77.    Plaintiffs are members of a protected class; they are African-American.

78.    Defendant's treatment of Plaintiff, as described above, was based at least in part, on the unlawful consideration of their race.

79.    Similarly situated white employees were treated better in the terms and conditions of their employment, and were promoted.

80.    Agents of Defendant were predisposed to discriminate against Plaintiffs based on their race.

81.    The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiffs.

82.    As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiffs' employment were adversely affected, and Plaintiff Adams was unlawfully terminated.

83.    As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and

pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT IV
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964,** as *against Defendant Enterprise*

84.    Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs.

85.    At all relevant times, Plaintiffs were employees and Defendant their employer within the meanings set forth in Title IVV of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000(e), *et seq.*

86.    Plaintiffs engaged in activity protected by Title VII when they complained of and opposed unlawful racist discrimination.

87.    The retaliation by Defendants that Plaintiffs experienced included denial of holiday pay, reduction of Plaintiff's compensation tiers, discipline, and termination. Defendants also attempted to discourage Plaintiffs from continuing to raise issues of racial harassment and discrimination, and told Plaintiffs to find other employment because of their complaints of and opposition to Defendants' unlawful harassment and discrimination.

88.    The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiffs.

89.    As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiffs' employment were adversely affected, and Plaintiff Adams was unlawfully terminated.

90.    As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT V
### Race Discrimination in Violation of 42 USC § 1981 as *against Defendant Enterprise*

91.    Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs.

92.    42 USC § 1981 prohibits individuals from engaging in acts of racial discrimination.

93.     Defendant's discrimination against Plaintiffs as described above is in violation of the rights of plaintiffs afforded them by the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

94.     Plaintiffs are members of a protected class; they are African-American.

95.     By the conduct described above, Defendant intentionally deprived Plaintiffs of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendants, in violation of 42 USC § 1981.

96.     Defendant's treatment of Plaintiff, as described above, was based at least in part, on the unlawful consideration of their race.

97.     Similarly situated white employees were treated better in the terms and conditions of their employment, and were promoted.

98.     Agents of Defendant were predisposed to discriminate against Plaintiffs based on their race.

99.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiffs.

100.   As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiffs' employment were adversely affected, and Plaintiff Adams was unlawfully terminated.

101.   As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT VI
### Retaliation in Violation of 42 USC § 1981 as *against Defendant Enterprise*

102.   Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs.

103.   42 USC § 1981 prohibits individuals from retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race discrimination.

104.   Defendant's discrimination against Plaintiffs as described above is in violation of the rights of plaintiffs afforded them by the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

105.   By the conduct described above, Defendant intentionally deprived Plaintiffs of the same rights as are enjoyed by white citizens to the creation,

17

performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendants, in violation of 42 USC § 1981.

106.   Plaintiffs engaged in activity protected by 42 USC § 1981 when they complained of and opposed unlawful racist discrimination.

107.   The retaliation by Defendants that Plaintiffs experienced included denial of holiday pay, reduction of Plaintiff's compensation tiers, discipline, and termination. Defendants also attempted to discourage Plaintiffs from continuing to raise issues of racial harassment and discrimination, and told Plaintiffs to find other employment because of their complaints of and opposition to Defendants' unlawful harassment and discrimination.

108.   The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiffs.

109.   As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiffs' employment were adversely affected, and Plaintiff Adams was unlawfully terminated.

110.   As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their

future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiffs demand judgment against Defendant as follows:

### A.    LEGAL RELIEF

1.    Compensatory, economic, and noneconomic damages in whatever amount Plaintiff is found to be entitled;

2.    A judgment for lost wages and benefits, past and future, in whatever amount Plaintiff is found to be entitled;

3.    Exemplary damages in whatever amount Plaintiff is found to be entitled;

4.    Liquidated damages in whatever amount Plaintiff is found to be entitled; and

5.    An award of interest, costs and reasonable attorney fees.

### B.    DECLARATORY & EQUITABLE RELIEF

1.    An injunction from this Court prohibiting any further acts of discrimination, intimidation, or retaliation;

2.    An award of interest, costs, and reasonable attorney fees; and

3.    Whatever other declaratory and/or equitable relief appears appropriate at the time of final judgment.

**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiffs
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
Dated:  December 14, 2018        (248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

## JURY DEMAND

Plaintiffs**,** by their attorneys **Deborah Gordon Law,** demand a trial by jury

of all the issues in this cause.

**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiffs
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
Dated:  December 14, 2018        (248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com